IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Feldman, : 
            Petitioner : 
     : 
     :   No. 768 C.D. 2018
     : 
     v.       : 
     :   Argued: March 14, 2019
Pennsylvania Commission : 
on Crime and Delinquency, : 
            Respondent : 


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE McCULLOUGH                 FILED: April 18, 2019


Matthew Feldman (Requester) petitions for review of the May 8, 2018 final determination of the Pennsylvania Office of Open Records (OOR) that denied in part, and dismissed as moot in part, his appeal from the Pennsylvania Commission on Crime and Delinquency's (Commission) denial of his request for documents under the Right-to-Know Law (RTKL).[1]

## Facts and Procedural History

On January 19, 2018, Requester submitted a RTKL request, by email, to the Commission seeking information relating to the Victims Compensation Assistance Program (VCAP),[2] which the Commission administers. (Reproduced

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[2] Pursuant to sections 701-710 of the Crime Victims Act, Act of November 24, 1998, P.L. 882, 18 P.S. §§11.701-11.710, the Commission provides compensation to certain victims of crimes.

Record (R.R.) at 5.)[3] Specifically, Requester made the following requests for documents:

> 1. A list of individuals (with names and other identifying information redacted if necessary) whose applications for victim compensation benefits were denied/closed (*i.e.* not approved) from Oct. 1, 2015 – Sept. 30, 2016, along with the reason for the denial/closed status and individuals' race/ethnicity, gender, age, ZIP code, and county of residence.
>
> 2. Same as #1 but for the period Oct. 1, 2016 – Sept. 30, 2017.

(R.R. at 5.) On January 24, 2018, Requester spoke on the telephone with counsel for the Commission. The Commission's counsel informed Requester that the Commission is not required to release confidential information under the RTKL. Requester stated that he was not seeking confidential information, such as the names or other identifying information of claimants for victim compensation. Commission's counsel agreed to allow the phone conversation to serve as an amendment to the request, and thereby exclude confidential information, so that Requester would not have to receive a denial and re-submit his request. (R.R. at 2, 6.)

On January 26, 2018, the Commission issued an interim response to Requester's RTKL request. The Commission noted that, pursuant to the telephone conversation, Requester agreed to amend his request to exclude confidential information. The Commission also stated that the request was still being reviewed, but that a final response would be provided by the Commission by February 26, 2018. (R.R. at 6.)

---

[3] While Rule 2173 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2173, directs that the page numbers in the reproduced record be followed by the letter "a," here, the page numbers in the reproduced record do not contain such a designation.

Thereafter, the Commission issued its final response on February 23, 2018, stating that the request was granted in part and denied in part. The Commission explained that it had attached a chart listing the number of, and reason for, VCAP denials for the time period requested and a separate chart listing, by county, the total number of claims made and the amounts awarded during that period. However, the Commission stated that the request for "individuals' race/ethnicity, gender and age" was denied because, "[w]hile the VCAP application for compensation benefits requests such demographic information, it is not required of applicants, and is often not provided by them." (R.R. at 8.) The Commission explained that such "information [was] not maintained by this Agency in the regular course of business." *Id.* Accompanying the final response were four charts. One of the charts listed the VCAP claims that were denied during the relevant time period, sorted by the reasons for denials. The other three charts provided information about claims filed and paid, but not claims denied. (R.R. at 10, 52-53, 54-88.)

On March 9, 2018, Requester filed an appeal of the Commission's final response with the OOR, claiming that the final response was incomplete. Specifically, Requester argued that the response only provided "a total number of claims denied for particular reasons," but did not provide "what [he] requested, which [was] a listing of claims denied, with confidential information redacted, but providing the [claimants'] race/ethnicity, gender, age, ZIP code and county of residence." (R.R. at 3.) Requester noted that the final response "provide[d] no reason for the omission of zip code and county of residence." *Id.* Requester also asserted that although the Commission argued it did not maintain demographic data for claim denials, demographic information is provided by the Commission to the United States Department of Justice's Office for Victims of Crime and published online. (R.R. at 3-4.)

3

The Commission filed a response to Requester's appeal on March 20, 2018. The Commission claimed that it provided information on claims by county of origin and that the requested demographic information was exempt from disclosure under section 708(b)(16)(iv) of the RTKL, which exempts from disclosure "[a] record of an agency relating to or resulting in a criminal investigation, including . . . a record that includes information made confidential by law or court order." 65 P.S. §67.708(b)(16)(iv). The Commission contended that the requested demographic information was "made confidential by law" pursuant to section 709 of the Crime Victims Act.[4] (R.R. at 20-22.) On March 30, 2018, Requester filed a reply noting that the exemption claimed by the Commission did not apply to aggregated data because, pursuant to section 708(d) of the RTKL, "the exceptions set forth in subsection (b) [of section 708 of the RTKL] shall not apply to aggregated data maintained or received by an agency, except for data protected under subsection (b)(1), (2), (3), (4) or (5)." 65 P.S. §67.708(d). Requester also noted that the criminal investigation exception did not apply to the requested records because the Commission does not conduct investigations, and that the requested information is not confidential because it is regularly released to the public. (R.R. at 34-35.)

---

[4] 18 P.S. §11.709. Section 709 of the Crime Victims Act provides, in relevant part as follows:

> **(a) General rule.**--All reports, records or other information obtained or produced by the bureau during the processing or investigation of a claim shall be confidential and privileged . . . .
>
> **(b) Disclosure restricted.**--Except as otherwise provided by law, no person who has had access to a report, record or any other information under this subsection shall disclose the content of such a report, record or other information . . . .

*Id.*

Thereafter, the Commission filed a sur-reply. The Commission changed its position and concluded that it was possible "to add aggregate information about race/ethnicity, gender and age of denied claimants to the data that [had] already been provided without violating the law . . . regarding maintaining the confidentiality of claimants under the Crime Victims Act." (R.R. at 37.) The Commission noted, however, that claimants were not required to provide such demographic information and that the data was incomplete. *Id.* The Commission attached three new charts to its reply: one listed the race of claimants whose claims were denied; one listed the ages of claimants whose claims were denied; and one listed the gender of claimants whose claims were denied. However, none of these charts connected the demographic information to the reason for the denial. (R.R. at 37, 41-43.)

The Commission also made a new argument with respect to withholding zip code information. The Commission explained that providing a zip code could "effectively breach confidentiality[,] which [Commission] policies and the laws of the Commonwealth protect" and would be "counter to the concession [the Commission] has made to provide aggregate data." (R.R. at 37.) The Commission also noted that "[i]dentifying claimants by zip code reduces the data such that it is no longer aggregate, but is more identifiable with individual claimants, and is tantamount to providing the claimants' addresses." (R.R. at 37-38.) In support of this assertion, the Commission attached an affidavit signed by the Deputy Director of the Commission's Office of Victim Services, which stated, "[i]t is possible that the zip codes of claimants whose claims have been denied can be related back to the individual. My search demonstrated that in a number of cases there is only one denial [in] one zip code. This is tantamount to providing the address of a claimant." (R.R. at 39-40.) The reply also stated that the Commission was not required to maintain records of claimants' zip codes, providing this information

5

would require the Commission to cull its records to create a record that it does not maintain in the regular course of business, and that, under the RTKL, it was not required to create a record that does not currently exist. (R.R. at 38.)

The OOR concluded that the Commission had "provided additional aggregated data detailing the race/ethnicity, gender and age of denied claimants" and that, "[t]herefore, insofar as it [sought] this material, the appeal [was] dismissed as moot." (OOR final determination at 5.) With respect to the zip code and county of residence data for denied claimants, the OOR determined that the requested information was confidential under section 709 of the Crime Victims Act, and that the Commission's release of aggregated data did not waive the applicability of the Crime Victims Act to the remaining information requested. *Id.* Thus, the OOR held that, pursuant to the Crime Victims Act, the Commission was under no obligation to provide the remaining information. (OOR final determination at 6.) The OOR also decided that because the remaining records were protected by the Crime Victims Act, it did not need to address whether they related to a criminal investigation. *Id.* Consequently, the OOR denied in part, and dismissed as moot in part, Requester's appeal, and determined the Commission was not required to take any further action. *Id.*

### Discussion

On appeal,[5] Requester raises the following issues: (1) the Commission never released the requested information because it did not provide the requested information in a single chart; and (2) the Commission has not met its evidentiary burden of demonstrating that it could not provide information about the zip codes

---

[5] Our standard of review of a final determination issued by the OOR is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

from which claims were denied without violating the confidentiality of the claimants.

Initially, we note that the general objective of the RTKL is "to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012). Under the RTKL, "records are presumed to be public records, accessible for inspection and copying by anyone requesting them, and must be made available to a requester unless they fall within specific, enumerated exceptions or are privileged." *Bowling v. Office of Open Records*, 75 A.3d 453, 457 (Pa. 2013). Yet, under section 705 of the RTKL, "[w]hen responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. §67.705.[6]

The RTKL provides that "[a] record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record"; however, this presumption does "not apply if: (1) the record is exempt under section 708 [of the RTKL];[7] (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree." Section 305 of the RTKL, 65 P.S. §67.305. The RTKL defines a public record as "[a] record . . . of a Commonwealth or local agency that: (1) is not exempt under section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." Section 102 of the RTKL, 65 P.S. §67.102.

---

[6] A "Record" is defined under the RTKL to include information stored electronically. Section 102 of the RTKL, 65 P.S. §67.102.

[7] Section 708(b) of the RTKL, 65 P.S. §67.708(b), sets forth a number of exceptions from disclosure under the RTKL.

7

Additionally, the RTKL states that "[n]othing in [the RTKL] shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree." Section 306 of the RTKL, 65 P.S. §67.306. Similarly, "[i]f the provisions of [the RTKL] regarding access to records conflict with any other Federal or State law, the provisions of [the RTKL] shall not apply." Section 3101.1 of the RTKL, 65 P.S. §67.3101.1.

## A. Release and Format of the Record Produced

We first address whether the Commission provided the requested information and whether the Commission was required to create a single chart for the requested information and/or format it in the manner requested. Requester notes that he requested aggregate data relating the reason for denial of a claim to each denied claimant's race/ethnicity, gender, age, zip code, and county of residence. Requester maintains that the Commission has released only isolated bits of information and has never fulfilled his actual request, *i.e.*, aggregate data **connecting** the reasons for denial of claims with demographic information. According to Requester, the effect of the Commission's piecemeal production has been to frustrate the purpose of the request, which is to observe the relationship between the reason for the denial of the claim and the demographic and geographic characteristics of the claimants. While the Commission claims that it has produced the requested information, Requester argues that the production of four separate charts that do not reference each other is not equivalent to his request. Requester contends that the information he is seeking resides in the Commission's database, that agencies cannot deny a RTKL request because of their unwillingness to produce data from such databases in a **useable format**, and that the release of data from an already existing database does not constitute the creation of a record under the RTKL.

8

In contrast, the Commission simply argues that **the RTKL does not require it "to gather data, link it, match it, connect it, and coordinate it** in order to respond to a request under the RTKL." (Commission's Br. at 5) (emphasis added). The Commission contends that the RTKL exempts from disclosure records that include information made confidential by law or court order; individuals' medical, psychiatric, or psychological information; and records related to criminal investigations. Additionally, pursuant to section 709 of the Crime Victims Act, 18 P.S. §11.709, the Commission is required to maintain the confidentiality of all reports or records produced during the processing of claims. The Commission asserts that, in an effort to respond to the request, it searched through data for thousands of claims and provided aggregate information that did not breach the confidentiality of the claimants. The Commission argues that it was not required to "connect the dots" of the aggregated data in order to assist Requester in his "research project." (Commission's Br. at 8.) It contends that under the RTKL it is **not obligated to create a record that does not currently exist** and that Requester's main complaint is that the Commission "did not organize the data in a certain way, [and] did not relate all aspects of the data, one to another, in a way that would provide him with a ready, and indeed facile, conclusion for his research efforts." *Id.* (emphasis added).

While the Commission contends that its claim denial records contain information exempt from disclosure under the RTKL and section 709 of the Crime Victims Act, it does not argue that the aggregated demographic data it already provided to Requester is exempt from disclosure. Instead, it argues that it is not required to create a record in response to the request.

We note that in *Department of Environmental Protection v. Cole*, 52 A.3d 541 (Pa. Cmwlth. 2012), the requester sought information from the Department of Environmental Protection related to a rebate program that was contained in a

9

computer database. *Id.* at 543-44. The Department argued that it could not be compelled to search through a computer database because that would constitute creating a record that did not exist, which was prohibited under section 705 of the RTKL. *Id.* In holding that the Department needed to provide the requested documents, we determined that although section 705 of the RTKL "excuses an agency from creating a new record or reorganizing existing records" and that "[a]n agency need only provide the information in the manner in which it currently exists . . . , **drawing information from a database does not constitute creating a record**" under the RTKL. *Id.* at 547 (emphasis added). We explained that, "to the extent requested information exists in a database, it must be provided," but that the Department was only required to provide information "**in the format in which it [was] available**." *Id.* at 548 (emphasis added). We further concluded that "pulling information from a database is not the creation of a record," and that while an agency is not required to compile information in a certain way, "**the information contained in databases that is subject to disclosure under the [RTKL] must simply be provided to request[ers] in the same format that it would be available to agency personnel**." *Id.* at 549 & n.12 (emphasis added).

To bolster our decision in *Cole*, we relied on our unreported decision in *Gingrich v. Pennsylvania Game Commission* (Pa. Cmwlth., No. 1254 C.D. 2011, filed January 12, 2013),[8] where the requester submitted a request seeking statistical data relating to the State's annual deer harvest, and requested the data in a specific format. *Id.*, slip op. at 2-4. There, we concluded that under the plain language of section 705 of the RTKL, "**an agency is not required to create or format a record in a manner specified by a requester** [but, r]ather, **an agency need only provide**

[8] Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

**the information in the manner in which it currently exists**." *Id.*, slip op. at 14-15 (emphasis added). We also held

> that a requester suggests a format or provides examples of the records sought in a certain format does not mean that a requester seeks special compilation. Requesters may provide suggestions or examples in order to better inform an agency about the information requested, and we have no desire to discourage that practice. In this case, [r]equester advised that the formats were suggested rather than required. [The r]equester thus placed the Commission on notice of his preferences—no more, no less.
>
> Providing data from an agency database does not constitute creating a record. This Court holds that information contained in a database must be accessible to requesters and provided in a format available to the agency. To the extent that the data exists in some format, the Commission must provide it. *See* 65 P.S. §67.305 (any record in possession of an agency is public unless exempt as proven by the agency). Accordingly, the Commission must disclose data responsive to the [request] in any format in which the information exists.

*Id.*, slip op. at 16; *see also Paint Township v. Clark*, 109 A.3d 796, 805-06 (Pa. Cmwlth. 2015) (same). Thus, under the RTKL and our case law, agencies must only produce database information in the format that is available to the agency and they are not required to produce the database information in a format specifically requested or in a format that does not exist.

Nevertheless, here, despite the Commission's argument regarding the creation of a record from aggregated data, we conclude that under the Crime Victims Act and section 306 of the RTKL all of the requested information is precluded from disclosure.

Section 708(b) of the RTKL provides a number of exceptions from disclosure, such as records "the disclosure of which . . . would result in the loss in

11

Federal or State funds by an agency or the Commonwealth," and records that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual," as well as approximately 30 additional exceptions, including, as noted by the Commission, "record[s] of an agency relating to or resulting in a criminal investigation." 65 P.S. §67.708(b) Section 708(d) of the RTKL provides that "[t]he exceptions set forth in subsection (b) [of the RTKL] shall not apply to aggregated data maintained or received by an agency, except for data protected under subsection (b)(1), (2), (3), (4) or (5)." 65 P.S. §67.708(d). The RTKL defines "aggregated data" as "[a] tabulation of data which relate to broad classes, groups or categories so that it is not possible to distinguish the properties of individuals within those classes, groups or categories." Section 102 of the RTKL, 65 P.S. §67.102.

However, as noted previously, **section 306 of the RTKL exempts from disclosure the release of any records that are in conflict with state or federal law**. In the instant case, section 709 of the Crime Victims Act provides a clear prohibition against disclosing **any victim information**, stating as follows:

> **(a) General rule.--All reports, records or other information obtained or produced by the bureau during the processing or investigation of a claim shall be confidential and privileged**, shall not be subject to subpoena or discovery, shall be used for no purpose other than the processing of a claim and, except as otherwise provided by law or as provided in this section, shall not be introduced into evidence in any judicial or administrative proceeding.

> **(b) Disclosure restricted.--**Except as otherwise provided by law, **no person who has had access to a report, record or any other information under this subsection shall disclose the content of such a report, record or other information** or testify in a judicial or administrative proceeding without the written consent of the direct victim

12

or intervenor or, if the direct victim or intervenor is deceased, the claimant.

(c) Construction.--This section shall not be construed to preclude or limit introduction of the contents of a report, record or other information in an appeal hearing before the Office of Victims' Services or in an investigation, prosecution or judicial proceeding enforcing section 1303 or in communicating with the prosecutor's office regarding restitution.

18 P.S. §11.709 (emphasis added).

Although the Commission believed that, pursuant to section 708(d) of the RTKL, it was required to provide aggregated data on claimants, given the language of section 709 of the Crime Victims Act, it was not required to do so. Section 709 makes clear that **all reports, records or information obtained or produced during the processing or investigation of a claim shall be confidential and privileged.** Here, Requester specifically requested "a list of individuals (with names and other identifying information redacted if necessary)" whose victim compensation benefits were denied, "along with the reason for the denial/closed status and individuals' race/ethnicity, gender, age, ZIP code, and county of residence." (R.R. at 5.) Demographic data submitted by claimants regarding their race/ethnicity, age, and/or gender qualifies as information obtained by the Commission during the processing of claims and information regarding the reason for denial qualifies as information produced during the processing or investigation of a claim; thus, this information must be kept confidential. Because section 709 of the Crime Victims Act mandates that all information obtained or produced by the Commission shall remain confidential, such information is not subject to disclosure under the RTKL. *See* Section 306 of the RTKL, 65 P.S. §67.306.

While section 708(d) of the RTKL provides that several of the RTKL exceptions of section 708(b) do not apply to "aggregated data," the aggregated data

provision only applies to the section 708(b) exceptions and not to records or documents that are considered nonpublic under other state laws. In other words, while most of the RTKL exceptions of 708(b) do not apply when data is aggregated, section 708(d) of the RTKL is inapplicable to records that are exempt from disclosure under another state law. *See* Section 306 of the RTKL, 65 P.S. §67.306 ("Nothing in [the RTKL] shall supersede or modify the public or nonpublic nature of a record or document established in . . . State law . . . ."); Section 305 of the RTKL, 65 P.S. §67.305 (providing that the presumption that a record in the possession of Commonwealth is a public record does not apply when "the record is exempt from disclosure under any . . . State law"). Because demographic data is exempt from disclosure pursuant to a different state law, *i.e.*, section 709 of the Crime Victims Act, the Commission misconstrued the RTKL by providing some of the requested data to Requester, even if only produced in aggregate form.

In several cases involving other state statutes protecting the confidentiality of records, we reached similar results. In *Jones v. Office of Open Records*, 993 A.2d 339, 340 (Pa. Cmwlth. 2010), we examined whether a Pennsylvania Board of Probation and Parole (Board) regulation exempted records from being disclosed under the RTKL. The relevant regulation provided that records, evaluations, and opinions in the Board's possession relating to "matters concerning a probationer or parolee are **private, confidential and privileged**." 37 Pa. Code §61.2 (emphasis added). Since the requester asked for recommendations made by a sentencing judge and prosecuting attorney, we held that, pursuant to the regulation and section 306 of the RTKL, the requested records were not subject to disclosure. *Jones*, 993 A.2d at 342.

Similarly, in the unreported decision of *Danvers v. Department of Aging* (Pa. Cmwlth., No. 2324 C.D. 2012, filed July 18, 2013), slip op. at 1-2, the requester sought records from adult protective services relating to his mother's care

14

and alleged neglect in a nursing home. In denying the request, adult protective services relied on section 306(a) of the Older Adults Protective Services Act,[9] which states that "information contained in reports, records of investigation, client assessment and service plans shall be considered confidential" and "shall not be disclosed to anyone outside the agency." *Danvers*, slip op. at 3 (citing 35 P.S. §10225.306(a)). Because the Protective Services Act "provide[d] a clear prohibition from disclosing reports and records of investigation," which were the records sought by the requester, we concluded that the requested records were exempt from disclosure under the RTKL. *Danvers*, slip op. at 4.

Likewise here, section 709 of the Crime Victims Act provides a clear prohibition from disclosing information obtained by the Commission during the processing of a claim, including demographic data, which are the records Requester seeks. Therefore, while the Commission was not required to create a new format or record of released aggregated data—and regardless of whether the Commission provided the actual requested data, whether the information exists in the Commission's database in the format requested, or whether the request sought the creation of a record that did not exist—because section 709 of the Crime Victims Act exempts from disclosure **any** information obtained or produced as part of a claim, Requester is not entitled to additional information regarding victims' claims.[10]

---

[9] Section 306(a) of the Older Adults Protective Services Act, Act of November 6, 1987, P.L. 381, *as amended*, 35 P.S. §10225.306(a).

[10] We also note that, as pointed out by Requester, some aggregated claimant demographic information appears on the United States Department of Justice, Office for Victims of Crime website. This may be because the Office for Victims of Crime provides grants to state victim compensation programs, *see* Sections 20102 and 20103 of Title 34 of the United States Code, 34 U.S.C. §§20102-20103, provided that the state program does not discriminate against recipients of benefits and submits recipients' demographic data to the Office for Victims of Crime to ensure compliance with the non-discrimination provisions, *see* Section 20110 of Title 34 of the United States Code, 34 U.S.C. §20110; Section 94.114 of Title 28 of the Code of Federal Regulations, 28 C.F.R. §94.114; Sections 42.104-42.106, 42.203, and 42.207 of the Code of Federal Regulations,

## B. Zip Code Data

Next, we address whether the Commission has met its evidentiary burden of demonstrating that it could not provide information about the zip codes from which claims were denied without violating the claimants' confidentiality. Requester argues that the Commission's "thin assertion" that some zip codes produced so few denials that providing that information could allow the public to identify the claimant, did not meet the Commission's burden of demonstrating that zip codes cannot be produced. (Requester's Br. at 21.) Requester contends that the Commission has not explained how releasing zip code information could allow the public to identify the claimant, and that the Commission is certainly not justified in withholding all zip code information. Requester further asserts that if the Commission is concerned that releasing zip codes could lead to determining the identity of a claimant, that risk could be addressed by simply redacting the zip codes that only have one denied claimant, instead of denying zip code information entirely. Requester also alleges that the OOR erred in relying on section 709 of the Crime Victims Act, 18 P.S. §11.709, and section 306 of the RTKL, 65 P.S. §67.306, to justify not disclosing any zip code information based on its conclusion that the confidentiality protections granted by those statutes do not apply to aggregated data.

Conversely, the Commission asserts that producing zip code information would violate its statutory obligation under the Crime Victims Act to preserve the confidentiality of a claimant's information. It argues that releasing zip

---

28 C.F.R. §§42.104-42.106, 42.203, 42.207. Despite the fact that some claimant demographic is available online, in *Coulter v. Pennsylvania Board of Probation and Parole*, 48 A.3d 516 (Pa. Cmwlth. 2012), we concluded that "estoppel as a doctrine does not apply to RTKL requests because whether a document is a public document or exempt, that character does not change just because the agency releases some information contained in the document." *Id.* at 519; *cf. Board of Supervisors of Milford Township v. McGogney*, 13 A.3d 569, 572-73 (Pa. Cmwlth. 2011) (holding that information does not become a public record if an agency's open records officer inadvertently discloses a non-public record).

codes for applicants poses a danger of breaching confidentiality "where the area covered by the zip code is sparse, and where there may have been a single or a very small number of claims from the area." (Commission's Br. at 9.) It maintains that there is a real danger that the zip codes of some claimants whose claims were denied could enable them to be identified. The Commission contends it complied with the confidentiality requirements of the Crime Victims Act by refusing to release the zip codes for claimants living in sparsely populated regions.

Based on our analysis in the preceding section, we agree with the OOR that, pursuant to section 709 of the Crime Victims Act and section 306 of the RTKL, information on the zip codes and counties of residence of denied claimants is exempt from disclosure. The request, here, sought "a list of individuals (with names and other identifying information redacted if necessary)" whose victim's compensation benefits claims were denied "along with the reason for the denial/closed status and individuals' . . . **ZIP code, and county of residence**." (R.R. at 5) (emphasis added). Like demographic data, geographic data, such as zip codes and counties of residence, are obtained by the Commission during the processing of claims. Because section 709 of the Crime Victims Act requires that **all** information obtained during the processing of a claim shall remain confidential, the requested geographic data is not subject to disclosure under the RTKL.[11]

---

[11] Moreover, under our precedent, zip code and county of residence information may be generally considered confidential and exempt from disclosure under the RTKL. In *Pennsylvania State Education Association v. Department of Community and Economic Development (PSEA)*, 148 A.3d 142 (Pa. 2016), our Supreme Court held that there is a constitutional right to privacy in one's home address in connection with RTKL requests, and that "the right to informational privacy is guaranteed" by the Pennsylvania Constitution "and may not be violated unless outweighed by a public interest favoring disclosure." *Id.* at 158. There, the Court concluded that the balancing weighed in favor of prohibiting disclosure of home address information. *Id.* Subsequently, in *Reese v. Pennsylvanians for Union Reform*, 173 A.3d 1143 (Pa. 2017), our Supreme Court explained that in *PSEA*, it determined a Commonwealth employee has a right to informational privacy in his or her home address and that "before the government may release personal

## Conclusion

Because we conclude that the demographic and geographic data of victims submitted by claimants for victims benefits compensation is not subject to disclosure under section 709 of the Crime Victims Act and section 306 of the RTKL, we affirm the determination of the OOR to the extent it denied Requester's appeal.

_____
PATRICIA A. McCULLOUGH, Judge

---

information, it must first conduct a balancing test to determine whether the right of informational privacy outweighs the public's interest in dissemination." *Reese*, 173 A.3d at 1159.

Thereafter, in *Governor's Office of Administration v. Campbell*, 202 A.3d 890 (Pa. Cmwlth. 2019), the requester sought Commonwealth employees' counties of residence. *Id.* at ___, slip op. at 2. Relying on *PSEA* and *Reese*, we concluded that "county of residence information is protected by the constitutional right of informational privacy" and, therefore, that the government had to apply a balancing test before disclosing the information. *Campbell*, 202 A.3d at ___, slip op. at 7. Based on the facts alleged, we could "perceive no public benefit or interest in disclosing the requested counties of residence of Commonwealth employees." *Id.* at ___, slip op. at 10. Thus, we held that "the requested Commonwealth employees' counties of residence information [was] protected by the constitutional right of informational privacy and this right [was] not outweighed by the public's interest in dissemination in [that] case." *Id.* at ___, slip op. at 11; *see also Brown v. Pennsylvania Department of State* (Pa. Cmwlth., No. 1046 C.D. 2017, filed May 25, 2018), slip op. at 4-6 (holding that zip code information of Department of Corrections health care professionals was exempt from disclosure under the RTKL).

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Feldman,                               :
                    Petitioner                 :
                                               :    No.  768 C.D. 2018
          v.                                   :
                                               :
Pennsylvania Commission                        :
on Crime and Delinquency,                      :
                    Respondent                 :

## ***ORDER***


AND NOW, this 18th day of April, 2019, the final determination of the Pennsylvania Office of Open Records, dated May 8, 2018, is hereby affirmed.


_____
PATRICIA A. McCULLOUGH, Judge