# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Department of Health,      :
                          Petitioner    :
                                        :
              v.                        :    No. 1066 C.D. 2021
                                        :    ARGUED:  May 17, 2022
Ed Mahon and Spotlight PA               :
(Office of Open Records),               :
                        Respondents     :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**<u>OPINION NOT REPORTED</u>**

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                **FILED:  August 19, 2022**


This petition for review concerns the disclosure under the Right-to-Know Law[1] (RTKL) of data regarding the number of patients certified to receive medical marijuana under the Medical Marijuana Act (Act)[2] for specific conditions and the required specificity of an affidavit denying the existence of written policies. The Department of Health appeals from a final determination of the Office of Open Records (OOR) granting the request of Requestor Ed Mahon, an investigative reporter, on behalf of Spotlight PA,[3] a news outlet (collectively, Respondents), for

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] Act of April 17, 2016, P.L. 84, *as amended*, 35 P.S. §§ 10231.101 - 10231.2110.

[3] Per records of the Pennsylvania Department of State, Bureau of Corporations and Charities, Spotlight PA is a fictitious name registered to The Philadelphia Inquirer, LLC.

the data sought and for written policies describing how the Department tracks the use of its medical marijuana program. We affirm in part and reverse in part.

The facts as found by the OOR are undisputed. On June 15, 2021, the request was filed with the Department seeking two items: first, "[a]ggregate data for the number of medical marijuana certification issues [sic] for each of the eligible qualifying conditions" and, second, "[a]ny written policies or procedures describing how the Department of Health tracks the use of its medical marijuana program, including which qualifying conditions are certified."[4] (Reproduced Record "R.R." at 3a-4a.) The Department denied the request with respect to the first item on the ground that responsive records are confidential patient information under Section 302(a) of the Act, 35 P.S. § 10231.302(a), and with respect to the second item on the ground that responsive records do not exist.

Requestor appealed to the OOR. After the parties filed statements, briefs, and exhibits in support of their positions, the OOR issued its final determination granting the request. With respect to the first item requested, the breakdown of patient data, the OOR rejected the Department's contention that the data was confidential under Section 302(a). The OOR explained that under its reading of Section 302(a), "[a]ny records not confidential under subsection (a), and not otherwise discussed in subsection [302(b)], are still presumed to be public records and subject to the RTKL." [OOR Final Determination, *In the Matter of Mahon v. Pa. Dep't of Health* (Docket No. AP 2021-1296, issued Sept. 2, 2021) at p.7 (quoting OOR Final Determination, *In the Matter of Finnerty v. Pa. Dep't of*

---

[4] The request indicates that an email from the Department's press office had suggested that the information was tracked. Although that email is referred to at various points in the reproduced record, it is not included therein.

2

*Health* (Docket No. AP 2021-1061, issued July 15, 2021)) at p.5.[5]]  The OOR quoted

*Finnerty's* discussion as follows:

> The overarching question before the OOR is whether the requested information—aggregate data consisting of the number of patients broken down by county—is "information . . . relating to patients, caregivers[] and other applicants . . . ."  35 P.S. § 10231.302(a).  It is difficult to believe that the General Assembly intended the release of aggregate data concerning the medical marijuana program to be a crime, and the context of Section 302 does not support the Department's broad interpretation.  Subsection (a) begins with discussing "a confidential list of patients and caregivers," and concludes by providing a non-exhaustive list of examples of records that are subject to confidentiality, all of which concern the identification of specific patients and caregivers.  The heading of subsection (a) is "Patient information."  Based upon this context, the OOR can only conclude that subsection (a) concerns information and records relating to specific patients and caregivers, rather than information in the aggregate about the program.

[*Id.* at 7 (quoting *Finnerty*) (footnotes from *Finnerty* omitted)].  Applying *Finnerty*,

the OOR continued:

> Turning to the instant matter, in Item 1, the Requester expressly seeks aggregate data namely, "*aggregate data for the number of medical marijuana certification* [sic] issue[d]" for the list of qualifying conditions found in the Act.  The Department asserts that the requested data "falls plainly within the universe of ['[]all information obtained by the [D]epartment relating to patients, caregivers and other applicants[']" and is the type of "information relating to the patient's serious medical condition."  However, as in *Finnerty*, Item 1 expressly seeks data of

[5] The *Finnerty* final determination granted another request for aggregate patient data, and the number of medical marijuana patients per county, and is found in the reproduced record.  (R.R. at 81a-86a.)  The Department has appealed that decision to this Court at Docket No. 1356 C.D. 2021 and the matter is currently pending.

the medical marijuana certifications by category, not information that would be related to a specific patient, caregiver or applicant certification.

(*Id.* at 8.) The OOR went on to distinguish the instant case from *Feldman v. Pennsylvania Commission on Crime and Delinquency*, 208 A.3d 167 (Pa. Cmwlth.), *appeal denied*, 218 A.3d 374 (Pa. 2019) (discussed at pp. 5-6, *infra*).

With regard to the second item requested, written policies, the OOR determined that the Department had failed to prove that responsive records did not exist, deeming an affidavit submitted by the Department denying the existence of responsive records to be insufficiently detailed and conclusory.

On appeal, the Department raises two issues: (1) whether the OOR erred as a matter of law in concluding that the records requested (the aggregate number of patients by condition) were not confidential under Section 302(a) of the Act and (2) whether the OOR erred in disregarding the affidavit as competent evidence in determining that the Department failed to prove the nonexistence of responsive records concerning written policies.

With regard to its first issue, the Department relies upon Section 302(a) of the Act, which provides as follows:

> (a) Patient information.**--**The [D]epartment shall maintain a confidential list of patients . . . to whom it has issued identification cards. All information obtained by the [D]epartment relating to patients . . . shall be confidential and not subject to public disclosure, including disclosure under the [RTKL], including:
>
> (1) Individual identifying information about patients.
>
> (2) Certifications issued by practitioners.
>
> (3) Information on identification cards.

4

      (4) Information provided by the Pennsylvania State Police under section 502(b).

      (5) Information relating to the patient's serious medical condition.

35 P.S. § 10231.302(a).[6]  Subsection (b) goes on to list various specific records which are considered public, none of which pertain in the instant case.  *See* 35 P.S. § 10231.302(b).

      The resolution of this issue turns on whether the aggregated number of patients per condition constitutes "information obtained by the [D]epartment relating to patients" under Section 302(a).  The Department asserts that this prohibition should be read to prohibit the release of the requested information, citing our decision in *Feldman*.  In *Feldman*, a requestor sought a list of individuals from the Pennsylvania Commission on Crime and Delinquency who were denied crime victim compensation benefits categorized by demographic data, including race/ethnicity, gender, age, zip code, and county of residence.  208 A.3d at 169.  The requestor received certain aggregated data concerning victim compensation benefits awarded but was denied records concerning certain demographic information.  *Id.* We relied upon the language of Section 709 of the Crime Victims Act,[7] in concluding that *all* the records requested were confidential.  *Id*. at 174.  Section 709(a) provides that "*[a]ll reports, records or other information obtained or produced* by the [Pennsylvania Commission on Crime and Delinquency, Bureau of Victim Services,] during the processing or investigation of a claim shall be confidential and

---

[6] Under Section 305(a) of the RTKL, a record in the possession of a Commonwealth agency is presumed to be a public record unless it is exempt, *inter alia*, under state law or regulation.  65 P.S. § 67.305(a).

[7] Act of November 24, 1998, P.L. 882, *as amended*, 18 P.S. § 11.709.

privileged," 18 P.S. § 11.709(a) (emphasis added), and Section 709(b) provides that "[e]xcept as otherwise provided by law, no person who has had access to a report, record or any other information under this subsection shall disclose the content of such a report, record or other information," 18 P.S. § 11.709(b).

However, the confidentiality provision involved in this case is narrower than the provisions relied upon in *Feldman* and our more recent, unreported case, *Pennsylvania Department of Revenue v. Wagaman* (Pa. Cmwlth., No. 1494 C.D. 2019, filed December 30, 2021). In *Wagaman*, we held that information which would require analysis of an informational report, the aggregate tax totals gathered in a neighborhood improvement zone by tax category, was confidential. *Wagaman* interpreted a newly amended Section 731 of The Fiscal Code,[8] 72 P.S. § 731 (relating to confidential information), which provides:

> Except as provided by law, any information gained by any administrative department, board, or commission, as a result of any returns, reports, correspondence, claims, investigations, hearings, certifications or verifications required or authorized under the statutes of the Commonwealth imposing taxes or bonus for state purposes, or providing for the collection of the same, providing for credits as administered by the [Department] independently or in conjunction with other agencies or revenue transfers to improvement or economic development zones shall be confidential except for official purposes . . . .

---

[8] Section 731 of Act of April 9, 1929, P.L. 343, *as amended*, added by Section 9 of Act of June 6, 1939, P.L. 261, 72 P.S. § 731. The amendment adding "reports" to the definition of confidential information was added by Act of June 30, 2021, P.L. 62 (effective July 1, 2021, retroactive to January 1, 2016).

Thus, *Feldman* and *Wagaman* each address statutes that prohibit the disclosure not only of information contained in submissions, but also, in each case, records produced by an agency in reports.

Conversely, Section 302(a) of the Act is a narrower, more specific, provision. It renders confidential only "[a]ll information obtained by the [D]epartment *relating to patients*," who are defined by Section 103 of the Act to be "individual[s]."[9] Section 302(a) by its own terms does not make all information, such as reports, confidential. The larger context of the confidentiality provision suggests a similar construction, with the Department required to "maintain a confidential list of [individual] patients . . . to whom it has issued identification cards" and a list of examples of such information, albeit non-exclusive, which are by their nature individual (i.e., "[i]ndividual identifying information about patients . . . ."; "[c]ertifications issued by practitioners"; "[i]nformation on identification cards"; "[i]nformation provided by Pennsylvania State Police . . . ."; and "[i]nformation relating to the patient's serious medical condition"). 35 P.S. § 10231.302(a). The relationship to individual patients in these prohibitions is manifest and exclusive. Thus, we conclude that the aggregated data requested is not

---

[9] Section 103 of the Act defines "patient" to mean "[a]n *individual* who: (1) has a serious medical condition; (2) has met the requirements for certification under this [A]ct; and (3) is a resident of this Commonwealth." 35 P.S. § 10231.103 (relating to definitions) (emphasis added).

7

patient information under Section 302(a), and because only patient information is protected, the requested data is subject to disclosure.[10, 11]

The Department next argues that the OOR erred in disregarding the affidavit stating that no responsive records existed to the request for written policies for tracking the use of the medical marijuana program. The Department's affidavit, affirmed by its open records officer and submitted during the appeals process to the OOR, stated that she was familiar with the records of the agency, that she had performed a comprehensive search for responsive records,[12] and that there were no such policies within the Department's possession. (Affidavit, R.R. at 100a-01a.) The Department notes that the OOR rejected the affidavit solely on the ground that

---

[10] Nevertheless, we reject the contention of Respondents that the provision relating to aggregate data in the RTKL, *see* Section 708(d) of the RTKL, 65 P.S. § 67.708(d), and Section 302(a) must be read in *pari materia*. *See* Section 305(a) of the RTKL, 65 P.S. § 67.305(a) (records in an agency's possession are presumed public unless exempt "under any . . . State law"). The RTKL is clear; state statutes that designate the "public or nonpublic nature of a record" supersede the RTKL and its disclosure mandate. Section 306 of the RTKL, 65 P.S. § 67.306; *see Highmark Inc. v. Voltz*, 163 A.3d 485 (Pa. Cmwlth. 2017) (*en banc*) (upholding insurance statutes as statutory exemption). Our decision here is based exclusively on our reading of Section 302(a).

[11] The Department also argues that releasing the requested data would subject its employees to criminal liability. (Dep't Br. at 15.) However, the misdemeanor provision in Section 1307 of the Act does not apply where "disclosure is permitted . . . by law or by court order." 35 P.S. § 10231.1307.

The Department also argues in a footnote that several other confidentiality provisions in Pennsylvania Law would be "rendered useless by the OOR's wholesale provision of aggregate information." (Dep't Br. at 15 n.4). This argument misses the point. It is not the aggregation of the data that makes it subject to disclosure, but rather the narrow limitation of the confidentiality provision to *patient information*, which we have found not to apply to the requested data. Thus, we do not believe that our holding gives wholesale provision of aggregate information in every context. *See Feldman* and *Wagaman*. Furthermore, this argument is undeveloped and therefore waived.

[12] The Department's denial of the request indicated that the open records officer had been advised that no such records exist. (Denial Letter, R.R. at 4a.)

8

it was conclusory, without discrediting the affiant, finding that the Department acted in bad faith, or even noting contradictory or countervailing evidence. The Department contends that if a record does not exist, it is "axiomatic" that denial of its existence is sufficient proof. (Dep't Br. at 17.) The Department suggests that this constituted a determination concerning the affiant's credibility, and that while it might have welcomed the opportunity to participate in an evidentiary hearing, in the absence of one, the affidavit was sufficient.

Respondents ask that the Court adopt the OOR's findings of fact and legal reasoning. Respondents cite various statements of this Court concerning the requirements of affidavits addressing attempts to bring records within exemptions to the RTKL. For such purposes, testimonial affidavits must be relevant and credible to provide sufficient evidence in support of a claimed exemption. *Heavens v. Pa. Dep't of Env't Prot.*, 65 A.3d 1069, 1074 (Pa. Cmwlth. 2013). An affidavit must be detailed, nonconclusory, and submitted in good faith, and merely tracking the language of an exception it presupposes is insufficient to demonstrate that the responsive records are exempt from disclosure. *Pa. State Police v. Muller*, 124 A.3d 761, 765 (Pa. Cmwlth. 2015). A generic determination or conclusory statements are not sufficient to justify the exemption of public records. *Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013). Respondents assert that the affidavit provided here lacked the requisite detail and point out evidence that the Department apparently does track this data to some extent.[13]

---

[13] At a meeting of the Medical Marijuana Advisory Board on August 14, 2019, it was reported that there were about 180,000 patient registrants in the program (Minutes at 24, R.R. at 52a), and in response to a board member's question, it was reported that 50.5% of those patients were certified for intractable pain and that about 3,000 patients were certified for anxiety, representing 2.7% of the total at that point (Minutes at 27-28, R.R. at 55a-56a). A presentation dated February 13, 2020, given at another Board meeting, available on the Department's website, breaks down **(Footnote continued on next page…)**

The cases cited by Respondents establish that to meet the burden of establishing that a record is *exempt from disclosure*, a testimonial affidavit from an agency must be detailed and non-conclusory. However, while an agency also has the burden of proving that a record does not exist, "it may satisfy its burden of proof . . . with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record." *Hodges v. Pa. Dep't of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011); *Moore v. Off. of Open Recs.*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010) (search of records and sworn and unsworn affidavits that documents were not in agency's possession are enough to satisfy burden of demonstrating nonexistence). It is questionable to what degree additional detail and explanation are necessary to establish the nonexistence of a record rather than its exemption from disclosure. In the absence of any competent evidence that the agency acted in bad faith or that the agency records exist, the averments in such affidavits should be accepted as true. *Smith Butz, LLC v. Pa. Dep't of Env't Prot.*, 142 A.3d 941, 945 (Pa. Cmwlth. 2016).

In the instant case, we have no such countervailing evidence. In addition, we decline to presume that the compilation of records of medical marijuana patients by condition means that there are "written policies and procedures" for tracking the use of the medical marijuana program. As our review of final determinations of the OOR is *de novo*, we need not defer to its findings, particularly when there is a lack of evidence to support them.

---

and ranks the proportion of medical marijuana patient registrants by condition. (Powerpoint Presentation, R.R. at 137a.)

10

In light of the foregoing, we affirm that portion of the OOR's determination relating to disclosure of the number of patients certified by condition and reverse that portion relating to disclosure of written policies.

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Department of Health,    :
                        Petitioner    :
                                      :
          v.                          :    No. 1066 C.D. 2021
                                      :
Ed Mahon and Spotlight PA            :
(Office of Open Records),            :
                        Respondents   :

# **O R D E R**

AND NOW, this 19th day of August, 2022, the determination of the Office of Open Records is AFFIRMED IN PART and REVERSED IN PART in accordance with the foregoing opinion.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita