IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Todd Shepherd and                :
Broad and Liberty, Inc.,          :
                                    :
                 Petitioners  :
                                      :
          v.                 :  No. 900 C.D. 2024
                                      :  Submitted: April 3, 2025
Pennsylvania Office of the Governor  :
(Office of Open Records),       :
                                    :
                 Respondent :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                            FILED: June 5, 2025


Todd Shepherd and Broad and Liberty, Inc. (Petitioners) petition for review from the June 14, 2024 Final Determination of the Office of Open Records (OOR), granting in part and denying in part their appeal from the Pennsylvania Office of the Governor's (Office) refusal to produce records they requested pursuant to the Right-to-Know Law (RTK Law or Law).[1] For the reasons that follow, we affirm in part and reverse and remand in part.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

## BACKGROUND

On December 1, 2023, Petitioners requested the following documents from the Office:

[1.] Any manual, procedure, outline, or guide, created by or in possession of any person on Governor Shapiro's staff, on how to administer an investigation into claims or allegations of workplace misconduct.

[2.] Any email from any person in the office of Gov[ernor] Josh Shapiro, to Mike Vereb, from the dates of March 1, 2023, to and including May 1, 2023, that notifies Mike Vereb of an investigation into his workplace conduct.

[3.] Any email (including attachments) sent or received by Mike Vereb, [Adrienne Miller, Akbar Hossain, Cindy Cashman, Justin Cornelius, Emily Shope, Spencer Schaeberie, Christopher Dailey, Lindsey Mauldin, an assistant to Mike Vereb with the name Spencer, Darice Mayhew and Greg Kauffman,] from the dates of Feb[ruary] 1, 2023, to an including June 1, 2023, mentioning Brianda Freistat by name, pronoun or code name.

[4.] Any email (including attachments) between Mike Vereb and Sen[ator] Katie Muth, between the dates of Feb[ruary] 01, 2023, to and including Aug[ust] 01, 2023.

[5.] All emails (including attachments) to/from Manuel Bonder, between the dates of Sept[ember] 1, 2023 and Oct[ober] 15, 2023, with a subject of misconduct allegations against Mike Vereb.

[6.] Any email (including attachments) sent or received by Darice Mayhew, from the dates of March 7, 2023, to and including April 7, 2023, mentioning Mike Vereb, by name, pronoun, or code name.

[7.] Any email (including attachments) sent or received by Mike Vereb, from the dates of Feb[ruary] 24, 2023, to

and including June 1, 2023, mentioning an investigation into Mike Vereb's workplace conduct.

[8.] Any email (including attachments) sent or received by Adrienne Muller, [Akbar Hossain, Cindy Cashman, Justin Cornelius, Emily Shope, Spencer Schaeberie, Christopher Dailey, Lindsey Mauldin, an assistant to Mike Vereb with the name Spencer, Darice Mayhew and Greg Kauffman,] from the dates of March 7, 2023, to and including April 7, 2023, mentioning an investigation into Mike Vereb's workplace conduct.

OOR Opinion at 1-2.[2]

After receiving an extension of time to respond, the Office partially granted the request and provided redacted records responsive to Item No. 5. The Office claimed that it redacted exempt personal identification information pursuant to Section 708(b)(6) of the RTK Law, 65 P.S. §67.708(b)(6), and noncriminal investigative material pursuant to Section 708(b)(17) of the RTK Law, 65 P.S. §67.708(b)(17). The Office also withheld records responsive to Item No. 5, claiming that they are exempt pursuant to Sections 708(b)(6) and 708(b)(17) of the Law. The remainder of the request was denied.

Specifically, with regard to Item No. 1 of the request, the Office asserted that the request was misdirected and indicated that the responsive records may be in the possession of the Pennsylvania Office of Administration. As for Item Nos. 2 and 7 of the request, the Office asserted that responsive records do not exist in its possession, custody, or control. In response to Item Nos. 3, 4, and 6 of the request, the Office asserted that those items were insufficiently specific pursuant to Section 703 of the RTK Law, 65 P.S. §67.703. Finally, with regard to Item No. 8 of

_____

[2] The OOR's Opinion can be found on page 154a of Petitioners' Reproduced Record (R.R.). For purposes of clarity, the OOR consolidated Petitioners' original 29-item request into 8 items as set forth above.

the request, the Office asserted that responsive records are exempt noncriminal investigative materials pursuant to Section 708(b)(17) of the Law. OOR Opinion at 2-3.

Petitioners appealed to the OOR. On January 29, 2024, the Office submitted a position statement reiterating its grounds for denial and further asserting that records withheld in response to Item No. 5 are exempt, internal, predecisional deliberations pursuant to Section 708(b)(10)(i)(A) of the RTK Law, 65 P.S. §67.708(b)(10)(i)(A), and protected by the attorney-client privilege. *See* Sections 102, 305(a)(2), and 506(c)(2) of the RTK Law, 65 P.S. §§67.102, 67.305(a)(2), and 67.506(c)(2). The Office also provided additional records responsive to Item No. 5. Lastly, the Office submitted an attestation authored by Marc Eisenstein (Eisenstein Attestation I), under penalty of perjury, who is the Office's Agency Open Records Officer. OOR Opinion at 3.[3]

On February 28, 2024, the Office submitted a second position statement and a second attestation authored by Mr. Eisenstein (Eisenstein Attestation II) under penalty of perjury.[4] OOR Opinion at 3. On March 4, 2024, the OOR directed the Office to conduct a search and identify responsive records with an assessment of exemptions responsive to Item Nos. 3 and 4 of the request to the extent they sought emails mentioning Brianda Freistat. The OOR further directed that the same action be taken with respect to Item No. 6 to the extent the request sought emails mentioning Mike Vereb by name. *Id.* at 4.

The Office responded on March 18, 2024, indicating that its search located 254 pages of potentially responsive records that are potentially exempt as

---

[3] Eisenstein Attestation I can be found on page 50a of the Reproduced Record.

[4] Eisenstein Attestation II can be found on page 68a of the Reproduced Record.

4

public safety records under Section 708(b)(2) of the Law, 65 P.S. §67.708(b)(2); as computer security records under Section 708(b)(4) of the Law, 65 P.S. §67.708(b)(4); as personnel records under Section 708(b)(7) of the Law, 65 P.S. §67.708(b)(7); as internal, predecisional deliberative records under Section 708(b)(10) of the Law; as noncriminal investigative material pursuant to Section 708(b)(17) of the Law; and as attorney-client and work product privileged material pursuant to Section 102 of the Law. The Office was then granted an extension of time to produce nonexempt records and to provide evidence in support of the stated exemptions. OOR Opinion at 4.

On April 1, 2024, the Office submitted an Exemption Log, containing a description of all responsive records that were withheld, which included citations to the exemptions claimed for each withheld record. Thereafter, on April 3, 2024, the Office submitted a third attestation authored by Mr. Eisenstein (Eisenstein Attestation III) under penalty of perjury as well as redacted records.[5] On April 4, 2024, the OOR ordered the Office to submit the withheld responsive records to the OOR for *in camera* review. OOR received the withheld documents on April 29, 2024.

## OOR DECISION

With regard to Item No. 1 of Petitioners' request, the OOR agreed with the Office that the request was misdirected. Nevertheless, the OOR noted, Petitioners could request the documents from the Office of Administration. OOR Opinion at 27.

---

[5] Eisenstein Attestation III can be found on page 91a of the Reproduced Record.

With regard to Item No. 2 of Petitioners' request, the OOR held that the Office demonstrated that it conducted a good faith search of its records. *See* Section 901 of the RTK Law, 65 P.S. §67.901 (directing that an agency shall make a good faith effort to determine if a record is a public record and whether the agency has possession, custody or control of the requested record). Based on the evidence presented in Eisenstein Attestation I, the OOR concluded that the Office demonstrated that it does not maintain responsive records related to the request. OOR Opinion at 26-27.

With regard to Item Nos. 3, 4, and 6 of Petitioners' request, and following the OOR's review of documents *in camera* as well as Eisenstein Attestation II, the OOR held that 15 documents were properly withheld by the Office because they are exempt as predecisional deliberative information pursuant to Section 708(b)(10)(i)(A) of the RTK Law. OOR Opinion at 14.[6] Furthermore, based on its *in camera* review and Eisenstein Attestation III, the OOR held that 27 documents were properly withheld because they are protected by the attorney-client and work product privileges pursuant to Sections 102, 305(a)(2), and 506(c)(2) of the RTK Law. OOR Opinion at 19.[7] Finally, based on its *in camera* review and Eisenstein Attestation III, the OOR held that three documents were properly withheld as noncriminal investigative materials pursuant to Section 708(b)(17)(ii) of the RTK Law, 65 P.S. §708(b)(17)(ii).[8] OOR Opinion at 22.

With regard to Item No. 5 of Petitioners' request, the OOR held that, based on Eisenstein Attestation I, the Office properly withheld documents because

---

[6] The documents are identified by number and are listed on page 14 of the OOR opinion.

[7] The documents are identified by number and are listed on page 19 of the OOR opinion.

[8] The documents are identified by number and are listed on page 22 of the OOR opinion.

they reflect internal predecisional deliberations under Section 708(b)(10)(i)(A) of the RTK Law. OOR Opinion at 12-13. Further, and also based on Eisenstein Attestation I, the OOR held that the remaining records responsive to Item No. 5 are protected by the attorney-client privilege and were not subject to disclosure. OOR Opinion at 17-18.

With regard to Item No. 7, the OOR held that the Office demonstrated that it conducted a good faith search of its records. *See* Section 901 of the RTK Law. Based on the evidence presented in Eisenstein Attestation I, the OOR concluded that the Office demonstrated that it does not maintain responsive records related to the request. OOR Opinion at 26-27.

Finally, with regard to Item No. 8, the OOR determined that the Office did not meet its burden of proving that the requested records are exempt under Section 708(b)(17) of the Law as noncriminal investigative records; thus, the OOR found that the records should be provided to Petitioners. OOR Opinion at 20-22.

Petitioners now appeal to this Court,[9] arguing that the OOR erred in holding that: certain records are exempt from disclosure pursuant to Section

---

[9] Recently, in the case of *Pennsylvania Office of Governor v. Brelje*, 312 A.3d 928, 932 (Pa. Cmwlth. 2024), we discussed our review in RTK Law appeals as follows:

> Pursuant to Chapter 13 of the [RTK Law], with respect to appeals relating to decisions of Commonwealth agencies, this Court is the ultimate factfinder in [RTK Law] disputes. Accordingly, we owe no deference to the OOR's legal analysis or factfinding, as our standard of review of a final determination of the OOR is [*de novo*]. In addition, we are entitled to the broadest scope of review, covering all justiciable issues raised and presented below. Unlike in other administrative agency contexts, we may substitute our own findings of fact for that of the agency. We have the discretion to conduct a hearing, or to remand to the OOR, to supplement the record.

(Citations omitted.)

7

708(b)(17) of the RTK Law; the Office appropriately withheld records pursuant to Section 708(b)(10)(i)(A) of the RTK Law; and certain documents are privileged pursuant to, *inter alia*, Section 102 of the RTK Law.

## DISCUSSION

We begin our analysis with a brief overview of the RTK Law. This Court has stated that the general objective of the RTK Law is "to empower citizens by affording them access to information concerning the activities of the government." *Feldman v. Pennsylvania Commission on Crime and Delinquency*, 208 A.3d 167, 171 (Pa. Cmwlth. 2019) (quoting *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012)). Courts should liberally construe the RTK Law to effectuate its purpose of promoting access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions. *Office of General Counsel v. Bumsted*, 247 A.3d 71, 76 (Pa. Cmwlth. 2021).

Under the RTK Law, "records are presumed to be public records, accessible for inspection and copying by anyone requesting them, and must be made available to a requester unless they fall within specific, enumerated exceptions or are privileged." *Feldman*, 208 A.3d at 171. The exceptions to disclosure of public records must be narrowly construed due to the RTK Law's remedial nature. *California Borough v. Rothey*, 185 A.3d 456, 465 (Pa. Cmwlth. 2018).

The RTK Law defines a public record as "[a] record . . . of a Commonwealth or local agency that: (1) is not exempt under [S]ection 708 [of the RTK Law]; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege."

8

Section 102 of the RTK Law. Pursuant to Section 305(a) of the RTK Law, 65 P.S. §67.305(a), a record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. Section 305(a) provides, however, that the presumption will not apply if "(1) the record is exempt under Section 708; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree." *Id.* "The burden of proving that a record of a Commonwealth or local agency is exempt from public access shall be on the Commonwealth agency or local agency . . . by a preponderance of the evidence." Section 708(a)(1) of the RTKL, 65 P.S. §67.708(a)(1).

## RECORDS EXEMPT PURSUANT TO SECTION 708(b)(17) OF THE RTK LAW

Petitioners' first issue focuses on the OOR's determination that the Office properly withheld three specific documents because they are exempt from disclosure as noncriminal investigative records pursuant to Section 708(b)(17) of the RTK Law. *See* OOR Opinion at 22. Section 708(b)(17), in pertinent part, exempts from disclosure a record of an agency including:

(i)     Complaints submitted to an agency.

(ii)    Investigative materials, notes, correspondence and reports.

\* \* \*

(vi)    A record that, if disclosed, would do any of the following:

(A) Reveal the institution, progress or result of an agency investigation, except the imposition of a fine or

9

civil penalty, the suspension, modification or revocation of a license, permit, registration, certification or similar authorization issued by an agency or an executed settlement agreement unless the agreement is determined to be confidential by a court.

65 P.S. §67.708(b)(17)(i), (ii), (vi)(A).

Petitioners note that in response to their RTK Law request, the Office provided them with an October 13, 2023 email from Manuel Bonder to Peter Hall. In the email, Mr. Bonder states that he was "sending along a statement on the Administration's process/policy [relating to discrimination and harassment complaints] . . . ." Email from Manuel Bonder to Peter Hall, 10/13/2023, Reproduced Record (R.R.) at 15a. What follows is a "Comment from Gov[ernor] Shapiro Spokesperson Manuel Bonder on the Commonwealth of Pennsylvania process/policy [(Comment)] . . . ." *Id.* The Comment indicates that

> [r]obust procedures are in place for thoroughly investigating reports of discrimination and harassment – and these procedures are implemented whenever complaints of discrimination or harassment are made and provide detailed guidance to help ensure that allegations are promptly and fully investigated and that employees feel comfortable to report misconduct. See: Management Directive 410-10 [(Management Directive).] (https://www.oa.pa.gov/Policies/md/Documents/410 10.pdf).
>
> These procedures expressly recognize that employees may subsequently report allegations to other entities, including the [Pennsylvania Human Relations Commission (PHRC)] or [United States Equal Employment Opportunity Commission], and that reports made to those entities are addressed in accordance with the law.

*Id.*

Citing Paragraph 2 of the Management Directive, titled "Scope," Petitioners assert that it applies to all agencies under the Governor's jurisdiction and

10

that the procedures outlined in the Management Directive apply to investigations of internal complaints of discrimination, including sexual harassment. Petitioners' Brief at 20 (citing Management Directive, ¶2a.-b.). Petitioners observe that Paragraph 7 of the Management Directive, titled "Procedures," acknowledges that an employee may, in addition to filing an internal complaint with their agency's Equal Opportunity Officer, elect to file a complaint with, *inter alia*, the PHRC. Petitioners' Brief at 22 (citing Management Directive, ¶7a.(5)). Moreover, Petitioners assert, "[w]henever a complaint is filed with [the PHRC], the investigation must be transferred to PHRC Legal Counsel, who will direct all further investigation and/or handling of the matter." *Id.* (citing Management Directive, ¶7a.(6)).

Per Petitioners, it is undisputed that both Ms. Freistat and Mr. Vereb were subject to the Management Directive because they worked for the Governor in the Legislative Affairs Office. It is also undisputed that Ms. Freistat exercised the option to file a sexual harassment complaint against Mr. Vereb with the PHRC. Petitioners in essence argue that once Ms. Freistat opted to pursue a harassment complaint with the PHRC, there was no longer a noncriminal investigation before the Office and, therefore, any exemptions cited by the Office that relate to noncriminal investigations as set forth in Section 708(b)(17) of the Law, are inapplicable.

The Office responds that Petitioners "erroneously suppose that *only* the [PHRC] may investigate reports of workplace misconduct." Office's Brief at 10 (emphasis in original). Citing the memorandum opinion in *Pennsylvania Liquor Control Board v. Perretta* (Pa. Cmwlth., No. 1470 C.D. 2018, filed November 18,

11

2019),[10] the Office argues that this Court has "squarely held" that agencies are legally empowered to conduct investigations pursuant to the Management Directive and as required by federal and state law. *Id.* at 11.

What is more, the Office observes that

> [b]ecause [the Management Directive] provides significant authority to investigate such allegations, any investigation undertaken thereunder is subject to Section 708(b)(17) [of the RTK Law], whether or not it relates to the particular matter that [Petitioners] may be interested in. On this point, the record here reflects that, regardless of the subject matter of the investigation at issue, the OOR independently examined the documents withheld by the Office and determined that the documents *did, in fact,* reveal the institution, progress or result of an investigation, and that they are therefore exempt. [Petitioners'] attempt to misapply [the Management Directive] cannot overcome this hurdle.

Office's Brief at 14 (emphasis in original). Furthermore, the Office stresses that Petitioners are "read[ing] one section of [the Management Directive] in insolation from the remainder of its provisions[] and unsurprisingly reach[ing] an incorrect conclusion." *Id.* Specifically, Petitioners contend that the existence of the widely reported PHRC complaint somehow divests the Office of the authority to undertake or continue an investigation.

The Office argues that, to the extent the Management Directive provides that "[w]henever a complaint or action is filed in any court or outside legal agency, the investigation must be *transferred to the agency Legal Counsel* who will direct all further investigation and/or handling of this matter[,]" Petitioners have

---

[10] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

misinterpreted this section and "illogically deduce" that any investigation must be transferred to the PHRC Legal Counsel. Office's Brief at 15 (citing the Management Directive, ¶7a.(6).) (emphasis in original). To the contrary, the Office contends that the Management Directive contemplates that "once litigation of any sort, whether filed with administrative tribunals (e.g.[, the] PHRC) or in state/federal courts (e.g.[,] a complaint under 42 U[.]S[.]C[.] §1983), *legal counsel for the affected agency* (i.e., [the Office], [the] Office of Administration, etc.) must coordinate the agency's efforts to investigate and take appropriate action regarding the complaint." *Id.* at 16 (emphasis in original).

We agree with the Office. Petitioners' tortured interpretation of the Management Directive cannot overcome its plain language. The existence of Ms. Freistat's PHRC complaint does not magically divest the Office from conducting a noncriminal investigation or possessing records related thereto. The plain language of the Management Directive tasks agencies under the Governor's jurisdiction to investigate and resolve internal discrimination complaints. That is precisely what occurred in this case. Petitioners' argument in this regard is without merit.

## RECORDS EXEMPT UNDER SECTION 708(b)(10)(i)(A) OF THE RTK LAW

Section 708(b)(10)(i)(A) of the RTK Law exempts from disclosure a record that reflects

> [t]he internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of

13

> action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. §67.708(b)(10)(i)(A).

As we noted earlier, pursuant to Section 708(a)(1) of the RTK Law, an agency bears the burden to prove, by a preponderance of the evidence, that a record is protected from disclosure under one of the Law's enumerated exceptions or contains privileged material. Where an appeal involves a Commonwealth agency, Section 1101(b)(1) of the RTK Law tasks the OOR appeals officer with the obligation of determining, in the first instance, whether an agency has met its burden of proof. 65 P.S. §67.1101(b)(1); *McGowan v. Pennsylvania Department of Environmental Protection*, 103 A.3d 374, 380-81 (Pa. Cmwlth. 2014). "Testimonial affidavits found to be relevant and credible may provide sufficient evidence in support of a claimed exemption." *Id.* at 381 (quoting *Heavens v. Department of Environmental Protection*, 65 A.3d 1069, 1073 (Pa. Cmwlth. 2013)). "Affidavits are the means through which a governmental agency . . . justifies nondisclosure of the requested documents under each exemption upon which it relied upon. The affidavits must be detailed, nonconclusory, and submitted in good faith . . . ." *Office of Governor v. Scolforo*, 65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (*en banc*) (quoting *Manchester Drug Enforcement Administration, U.S. Department of Justice*, 823 F. Supp. 1259, 1265 (E.D. Pa. 1993)). Additionally, a privilege log "which typically lists the date, record type, author, recipients, and a description of the withheld record, can serve as sufficient evidence to establish an exemption, especially when the information in the log is bolstered with averments in an affidavit." *McGowan*, 103 A.3d at 381.

To prove the predecisional deliberative exemption, an agency must show "(1) the information is internal to the agency; (2) the information is deliberative

14

in character; and (3) the information is prior to a related decision and thus 'predecisional.'" *McGowan*, 103 A.3d at 381. In discussing the exemption, the *McGowan* Court emphasized that "if governmental agencies were forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease[,] and the quality of the administrative decisions would consequently suffer." *Id.* (quoting *Joe v. Prison Health Services, Inc.*, 782 A.2d 24, 33 (Pa. Cmwlth. 2001)).

Petitioners argue that the Office has not presented sufficient evidence to support its assertion of the predecisional deliberative exemption. Pertinent here, the Office submitted Eisenstein Attestation III to support its claim of the exemption. Attached as "Exhibit A" to Eisenstein Attestation III are 40 pages of what the Office terms "non[]exempt" responsive records. Eisenstein Attestation III, 4/3/2024, "Exhibit A," R.R. at 95a-134a. The Office redacted portions of those records, asserting the predecisional deliberative exemption. The Office also withheld certain documents but provided an Exemption Log conveying why the Office believed the records are exempt from disclosure. *Id.*, "Exhibit B," R.R. at 135a-46a. Eisenstein Attestation III discussed the items contained in the Exemption Log. As to those documents being withheld based on the predecisional deliberative exemption, Eisenstein Attestation III provided:

> 9. With respect to materials denoted in the [Exemption Log] as containing internal, predecisional deliberations, such records are communications between agency officials and employees within [the Office] or between [the Office] and other agencies. In such communications[,] officials discussed plans, risks, and benefits of various approaches and courses of action prior to implementing such actions, as more specifically set forth in the [Exemption Log]. Such communications were not disclosed beyond the agencies.

*Id.*, ¶9, R.R. at 92a-93a.

15

Quoting from this Court's decision in *West Chester University of Pennsylvania v. Schackner*, 124 A.3d 382, 398 (Pa. Cmwlth. 2015), Petitioners highlight that to qualify for the predecisional deliberative exemption, an agency

> must explain how the information withheld reflects or shows the deliberative process in which an agency engages during its decision-making. First, agencies must show that the communication occurred prior to a deliberative decision. Second, agencies must submit evidence of specific facts showing how the information relates to the deliberation of a particular decision. Agencies may meet this burden by submitting an affidavit that sets forth sufficient facts enabling a fact-finder to draw its own conclusions.

Petitioners' Brief at 31-32.

Petitioners argue that in this case, the record is devoid of facts establishing how the exempted records contain information related to deliberations of a particular decision. Moreover, they claim that the Office has failed to show that the exempted records contain information predating the alleged deliberative decision. Finally, Petitioners contend that there is no evidence regarding the specific facts relied upon by the Office to show that the exempted records contain information related to the deliberation of a particular decision. Petitioners liken Eisenstein's Attestations to the affidavit submitted by the Office in *Scolforo*, where this Court found the affidavit to be conclusory and inadequate to meet the Office's burden.[11] Thus, Petitioners ask that this Court reverse the OOR and direct the Office to produce those documents set forth by number on page 14 of the OOR's opinion.

---

[11] In *Scolforo*, we observed:

> While the [a]ffidavit tracks the language of the exception it presupposes, rather than proves with sufficient detail, that the redacted [c]alendar entries are reflective of internal deliberations

**(Footnote continued on next page…)**

16

The Office counters that information is protected as predecisional and deliberative when an agency demonstrates that the information "reflects, or, in other words, 'mirrors' or 'shows' that the agency is engaged in the deliberative process; it does not require that the information itself reveals or 'discloses' deliberative communication." Office's Brief at 18 (quoting *McGowan*, 103 A.3d at 383). The Office asserts that Eisenstein Attestation III and the Exemption Log establish that the Office withheld records that were maintained by and only shared within the Office and its designees and that the records were used expressly for the Office's analysis and deliberations. "These records set forth information that informs the Office's decision-making and recommendations and form the basis for decisions to be made by the Office." Office's Brief at 20. The Office reiterates that in the communications, "officials discussed plans, risks and benefits of various approaches and courses of action prior to implementing such actions as more specifically set forth in the [Exemption Log]." *Id.* (quoting Eisenstein Attestation III, ¶9, R.R. at 93a). The Office quotes directly from the OOR's decision where, following *in camera* review of the documents, it concluded that they reflect

> appropriate processing of separation codes, potential candidates and position titles, options for processing of separation codes, options for processing of personnel matters, comments regarding changes to personnel file

and, therefore, exempt from disclosure. It is not enough to include in the [a]ffidavit a list of subjects to which internal deliberations may have related. The [a]ffidavit must be specific enough to permit the OOR or this Court to ascertain how disclosure of the entries would reflect the internal deliberations on those subjects. Because this [a]ffidavit is not detailed, but rather conclusory, it is not sufficient, standing alone, to prove that the [c]alendar entries are exempt from disclosure.

*Scolforo*, 65 A.3d at 1104 (citations omitted).

17

> records, replacement of IT equipment, the hiring process, the travel reimbursement process, prospective IT practices and processing of personnel actions.

Office's Brief at 20-21 (quoting OOR Opinion at 15). The Office contends that, contrary to Petitioners' assertions, the record contains more than sufficient evidence to establish that the records reflect discussions that are deliberative and predecisional in nature.

Our decision in *McGowan* is instructive in disposing of this issue. In that case, local community members, non-profit organizations, and members of local governments submitted a petition requesting that the Department of Environmental Protection (DEP) conduct an evaluation of the Perkiomen Creek basin for the purpose of redesignating the waterway as having "Exceptional Water Value." *McGowan*, 103 A.3d at 377.[12] The DEP reviewed the petition and issued a final report, recommending that Perkiomen Creek retain its current classification.

Thereafter, Kellie McGowan (requester) filed a RTK Law request with the DEP seeking:

1. All data collected, including notes and correspondence, for the Perkiomen Creek Water Quality Standards Review Stream Re-designation Evaluation Report.

2. All correspondence, memorandum and documents, including electronic correspondence, related to the Perkiomen Creek Water Quality Standards Review Stream Re-designation Evaluation Report.

*McGowan*, 103 A.3d at 377. DEP denied the request in part. Pertinent here, the DEP argued that certain records were exempt under Section 708(b)(10)(i)(A) of the RTK Law because they reflected, *inter alia*, internal, predecisional deliberations. In

---

[12] The redesignation was sought in order for the waterway to receive additional environmental protection measures, thereby ensuring that the creek's water quality would be safeguarded.

18

support of its denial, the DEP provided the requester with a privilege log which identified the withheld records and stated the legal basis for nondisclosure. The requester appealed and the OOR affirmed.

On further appeal, this Court carried out an extensive discussion of the predecisional deliberative exemption. Germane to the instant action, the *McGowan* Court observed:

> In order to demonstrate that the withheld documents are deliberative in character, an agency must "submit evidence of specific facts showing how the information relates to a deliberation of a particular decision." *Carey* [*v. Pennsylvania Department of Corrections*, 61 A.3d 367, 369 (Pa. Cmwlth. 2013]. In *Scolforo*, this Court determined that "the terms *reflects* and *deliberations* in Section 708(b)(10)(i)(A) supports the conclusion that Section 708(b)(10)(i)(A) codifies the deliberative process privilege" as that principle was elucidated by our Supreme Court in *Commonwealth v. Vartan*, 733 A.2d 1258, 1263 (Pa. 1999) (plurality).[13] *Scolforo*, 65 A.3d at 1101-02 (emphasis in original). The *Scolforo* [C]ourt concluded that the predecisional deliberation privilege protects information where the agency demonstrates that the information merely *reflects*, or, in other words, "mirrors" or "shows," that the agency engaged in a deliberative *process*; it does not require that an agency establish that the information *reveals* or "discloses" deliberative communication. *Scolforo*, 65 A.3d at 1101-02. Further, [S]ection 708(b)(10)(i)([A]) of the [RTK Law] exempts all predecisional deliberations where agency officials and/or employees "contemplate" or "propose" a future "course of action." 65 P.S. §67.708(b)(10)(i)([A]).

103 A.3d at 383 (emphasis in original).

---

[13] "The deliberative process privilege permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." *Vartan*, 733 A.2d at 1263.

The *McGowan* Court held that the affidavits presented by the DEP contained specific facts establishing that the withheld information related to the Department's deliberation of anticipated, future agency action. For example, the Court noted that the averments in one affidavit "demonstrate[d] that the substantive content of that memo consist[ed] of un-finalized and summarized rough draft reports of the Perkiomen Creek re-designation report." *Id.*, 103 A.3d at 384. The same affidavit demonstrated that the withheld documents "comprise[d] rough draft reports that were undergoing revision and further discussion by the [DEP] of the relevant factors and issues while the [DEP] was in the process of arriving at a final report and recommendation as to whether re[]designation of Perkiomen Creek would be appropriate." *Id.* Ultimately, the *McGowan* Court held that because the affidavits explained "in a particular fashion" how disclosure of the disputed documents would reflect the DEP's deliberative process while the DEP utilized the documents to "contemplate the feasibility of re[]designating Perkiomen Creek, decide when to release its final report to the public for comment, and determine the manner in which it [would] conduct outreach and evaluation[,]" they were not subject to disclosure. *Id.*[14]

*McGowan* guides that not every internal agency communication involving a decision to be made or a question to be answered is subject to the predecisional deliberative exemption. Rather, it is apparent that the exemption protects those communications which reflect that the agency is deliberating, as in

---

[14] In reaching its decision, the *McGowan* Court found the discussion in *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) to be instructive. There, in interpreting Exemption 5 of the Freedom of Information Act (FOIA), 5 U.S.C. §552(b)(5), the Circuit Court held that the predecisional deliberation exemption "covers recommendations, draft documents, proposals, suggestions, and other subjective documents . . . . Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency . . . ."

*McGowan*, a particular determination, ruling or policy. *See Office of General Counsel v. Bumsted*, 247 A.3d 71, 84 (Pa. Cmwlth. 2021) (only information that constitutes confidential deliberations of law or policymaking reflecting opinions, recommendations or advice is protected as deliberative). This "big picture" approach avoids an overbroad interpretation of the deliberative process exemption, which could conceivably lead to the exemption of virtually any discussion or dialogue that occurs within an agency. Moreover, it furthers the RTK Law's directive that exemptions from disclosure must be narrowly construed.

Turning to the present action, and based on our review of Eisenstein Attestation III and the Exemption Log, we are not inclined to say that they set forth the type of fulsome discussion necessary to show that the records at issue are exempted as predecisional and deliberative. In our view, Eisenstein Attestation III and Exemption Log do not, standing alone, readily explain how the withheld documents reflect the Office's deliberative processes. These insufficiencies do not, however, dictate that the documents at issue must be disclosed because our powers on review allow us, like the OOR did below, to analyze the documents *in camera* in order to make our own assessment.

Here, the Office's Exemption Log and Eisenstein Attestation III reflect that three sets of documents were not produced by the Office based solely on the claim that they were excluded by the predecisional deliberative exemption. Those documents are:

REL0000035157
REL0000031238
REL0000035161

Our review of the documents reveals that they are related to the processing of travel reimbursements and are not reflective of a particularized deliberative *process*. In

21

this regard, the documents do not reflect that the Office was carrying out deliberations of law or policymaking. Rather, the documents reflect discussions among employees of the Office concerning how reimbursements are made and requesting access so that reimbursement requests could be prepared. Because we conclude that the aforementioned documents are not the type of documents encompassed by the predecisional deliberative exemption, we conclude that the OOR erred in denying Petitioners access to them pursuant to Section 708(b)(10)(i)(A) of the Law.

For the same reasons, we conclude that the remaining documents[15] were improperly exempted from access based on the predecisional deliberative exemption. Our review reflects that the documents discuss an employee's resignation and the proper processing thereof; the hiring of a new employee and the determination of salary; the drafting of proposed employee separation letter; the possible acquisition of a new conferencing system; the creation of group security policies; the necessity of a background investigation; and whether certain employees were required to file statements of financial interests. Like the travel reimbursement documents discussed above, the remaining documents do not show that the Office was deliberating a particular determination, ruling or policy such that they should be

---

[15] Those documents are identified as:

REL0000028624
REL0000031847
REL0000031868 and REL0000031868.0001
REL0000031874 and REL0000031874.0001
REL0000032037
REL0000032197
REL0000034990
REL0000031297
REL0000035514
REL0000033919

22

exempted as predecisional. Accordingly, we conclude that the OOR erred in denying access to the remaining documents pursuant to Section 708(b)(10)(i)(A) of the Law.

We will not, however, direct the disclosure of these documents as the Office asserted before the OOR alternative reasons for their exemption under Section 708(b) of the RTK Law. Because the OOR ruled that the documents were exempt under Section 708(b)(10)(i)(A) of the Law, it did not address these alternative exemptions. Thus, under the circumstances, we will remand this matter to the OOR to consider the alternative Section 708(b) exemptions raised by the Office for the following documents:

> REL0000028624
> REL0000031847
> REL0000031868 and REL0000031868.0001
> REL0000031874 and REL0000031874.0001
> REL0000032037
> REL0000032197
> REL0000034990
> REL0000031297
> REL0000035514
> REL0000033919

## PRIVILEGED RECORDS

The presumption that a record in the possession of Commonwealth agency is a public record does not apply if the record is protected by a privilege. *See* Section 305(a)(2) of the RTK Law. Section 102 of the RTK Law defines the term "privilege" to mean "[t]he attorney-work product doctrine, the attorney-client privilege, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court interpreting the laws of this Commonwealth." 65 P.S. §67.102. In *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 368-69 (Pa. 2013),

23

our Supreme Court discussed the attorney-client privilege in the context of a RTK Law case, stating:

> This Court has repeatedly noted that the attorney-client privilege is deeply rooted in our common law and is the most revered of our common law privileges. The General Assembly has defined attorney-client privilege identically for purposes of criminal and civil law . . . . We recently observed that the purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. We acknowledged, however, that the attorney-client privilege is often in tension with the truth-determining process of the justice system, and, in this case, with the [RTK Law's] goal of government transparency. In balancing these competing purposes, we note that not all information passed between client and attorney is privileged, but rather the privilege is limited to communications related to the legal advice sought by the client.

(Citations omitted).

The Supreme Court further noted that

> the determination of the applicability of the attorney-client privilege does not turn on the category of the information, such as a client's identity or address, or the category of a document, such as whether it is an invoice or fee agreement. Instead, the relevant question is whether the content of the writing will result in disclosure of information otherwise protected by the attorney-client privilege. For example, descriptions of legal services that address the client's motive for seeking counsel, legal advice, strategy, or other confidential communications are undeniably protected under the attorney client privilege. In contrast, an entry that generically states that counsel made a telephone call for a specific amount of time to the client is not information protected by the attorney-client privilege but, instead, is subject to disclosure under the specific provisions of the [RTK Law].

24

*Id.* at 373 (citations omitted.)

To establish the application of the attorney-client privilege, an agency must demonstrate the following:

> (1)    The asserted holder of the privilege is or sought to become a client;
> (2)    The person to whom the communication was made is a member of the bar of a court, or his subordinate;
>
> (3)    The communication relates to a fact which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort; and
>
> (4)    The privilege has been claimed and is not waived by the client.

*Couloumbis v. Senate of Pennsylvania*, 300 A.3d 1093, 1102 (Pa. Cmwlth. 2023).

In Eisenstein Attestation I, the Office claimed that certain documents responsive to Item No. 5 of Petitioners' RTK Law request are privileged and not subject to disclosure. Mr. Eisenstein wrote:

> 5.    In response to the request, I reviewed the records, operations, and programs of the Office and conducted a search of the Office's records for emails (including attachments) to/from Manuel Bonder, between the dates of September 1, 2023[,] and October 15, 2023[,] with a subject of misconduct allegations against Mike Vereb and discovered 19 pages of records that were provided to [Petitioners] with the Office'[s] final response, as well as 51 pages of records withheld.
>
> 6.    The withheld records consist of the following:
>
> * * *

25

(b) One [five-]page email string, one [three-]page email string and one [two-]page email string between the Governor's Press and Communications staff and attorney(s) of the Office of General Counsel seeking and providing legal advice relating to the strategy for responding to inquiries placed with the Office, which were then under consideration by the Office for follow-up and additional action.

(c) One [three-]page email string between the [Office's] staff and attorney(s) of the Office of General Counsel forwarding a matter for review and discussion for purposes of conveying and receiving legal guidance with respect to inquiries forwarded to the Office.

(d) One 26[-]page email string between the [Office's] staff and attorney(s) of the Office of General Counsel forwarding an inquiry as to which the Office sought legal advice, and including records that would reveal the institution, progress or result of an investigation, including a complaint and witness statement forwarded to the Office by a third-party.

(e) One [two-]page email string between the [Office's] staff and attorney(s) of the Office of General Counsel review and discussion [sic] and for purposes of conveying and receiving legal guidance with respect to inquiries forwarded to the Office.

\* \* \*

(h) The above emails were transmitted between Office officials and employees and were not disclosed to individuals outside of the [Office] or executive agencies.

Eisenstein Attestation I, 1/29/2024, R.R. at 51a-52a.

As to these documents, the OOR stated:

Based upon the review of the descriptions contained in [Eisenstein Attestation I], the Office has demonstrated that the remaining withheld records, including the records

26

forwarded by a third party in the 26[-]page email string referenced in [Eisenstein Attestation I] ¶ 6d, are protected by the attorney-client privilege. The records consist of communications between the Office staff and its counsel regarding legal advice encompassing strategy relevant to press inquiries and an investigation. As [Petitioners have] not submitted evidence in support of the waiver of the privilege, the OOR need not address waiver of the privilege.

OOR Opinion at 17-18 (footnote omitted).

Petitioners take issue with the OOR's determination, focusing on the fact that the communications related to press inquiries. Petitioners contend that "[b]ased upon the statements issued by [the Office] in response to press inquiries, it is difficult to ascertain how a legal opinion was necessary to formulate 'strategy' for responding to press inquiries." Petitioners' Brief at 40. Petitioners opine that "[g]overnment lawyers are in the business of providing legal opinions and legal advice based upon applicable law. They are not and should not be involved in the formulation of strategies to respond to press inquiries related to a PHRC sexual harassment [c]omplaint." *Id.* at 40-41. On this basis, Petitioners ask that we reverse the OOR and direct that the disputed documents be produced.

The Office retorts that Petitioners are asking this Court to ignore the attorney-client privilege where a client seeks legal advice relating to press inquiries, asserting that Petitioners "appear to take the naïve position that organizations involved in litigation have no reason to seek or acquire legal advice when the public makes inquiries *about that litigation*." Office's Brief at 23 (emphasis in original). The Office points out, for example, that attorneys are directly engaged in providing clients who are involved in PHRC matters with legal advice concerning what the client may legally disclose. Furthermore, "lawyers are not only appropriately involved, but necessarily involved in counseling clients on how best to limit risk to

27

the organization whether such risks manifest in the alleged actions of the accused or the complainant." *Id.* at 23-24.

We conclude that Petitioners' argument is meritless. The record reflects that the Office, through the Eisenstein Attestations, established the criteria necessary to prove that the documents are subject to the attorney-client privilege. Petitioners' peculiar musings about how or why the Office required legal advice in the context of responding to press inquiries are insufficient to overcome the applicability of this venerated privilege. We need not belabor this argument further.

## CONCLUSION

For the foregoing reasons, the June 14, 2024 Final Determination of the OOR is affirmed in part and reversed and remanded in part.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Todd Shepherd and                          :
Broad and Liberty, Inc.,                   :
                                           :
                       Petitioners         :
                                           :
             v.                            : No. 900 C.D. 2024
                                           :
Pennsylvania Office of the Governor        :
(Office of Open Records),                  :
                                           :
                       Respondent          :

## **O R D E R**

AND NOW, this 5<u>th</u> day of June, 2025, the June 14, 2024 Final Determination of the Office of Open Records (OOR) is AFFIRMED to the extent it held that the documents identified at Nos. REL0000013919, REL0000013915, and REL0000075966 are exempt from disclosure as noncriminal investigative records pursuant to Section 708(b)(17) of the Right-to-Know Law (RTK Law), 65 P.S. §67.708(b)(17). [1]

The Final Determination of the OOR is AFFIRMED to the extent it held that documents responsive to Item No. 5 of Todd Shepherd and Broad and Liberty, Inc.'s RTK Law request are exempt from disclosure based on the attorney-client privilege. *See* Section 305(a)(2) of the RTK Law, 65 P.S. §67.305(a)(2). The Final Determination of the OOR is REVERSED to the extent it held that the documents identified at Nos. REL0000035157, REL0000031238, and REL0000035161 are

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

exempt from disclosure as predecisional and deliberative pursuant to Section 708(b)(10)(i)(A) of the RTK Law, 65 P.S. §67.708(b)(10)(i)(A).

The OOR is REVERSED to the extent it held that the following documents are exempt from disclosure pursuant to Section 708(b)(10)(i)(A) of the RTK Law:

REL0000028624
REL0000031847
REL0000031868 and REL0000031868.0001
REL0000031874 and REL0000031874.0001
REL0000032037
REL0000032197
REL0000034990
REL0000031297
REL0000035514
REL0000033919

This matter is REMANDED to the OOR to consider the alternative RTK Law exemptions raised by the Pennsylvania Office of the Governor with regard to these documents. The OOR shall thereafter issue a new determination from which any aggrieved party may appeal.

Jurisdiction relinquished.

_____
MICHAEL H. WOJCIK, Judge

2